IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| WESLEY LEE EVERETT #321293 | § | |
| v. | § | CIVIL ACTION NO. 6:08cv240 |
| AMY JONES, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Wesley Everett, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in this proceeding pursuant to 28 U.S.C. 636(c). As Defendants, Everett named unit classification officer Amy Jones, food service managers Cecil Hasty and Loyd Smith, correctional accreditation coordinator Vonda Johnson, and unit compliance sergeant Alynda Gatson, all of whom are located at the Powledge Unit.

An evidentiary hearing was conducted on February 12, 2009, pursuant to Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). At this hearing and in his complaint, Everett stated that he was at the Powledge Unit between 2006 and 2008. He worked in the officer's dining room as a dish washer, but he kept being moved back and forth between shifts to accommodate other inmates' schedules. Everett says that he went to inmate Jenkins, the butcher shop clerk, to go to Hasty and have Everett's job assignment changed to the butcher shop, and this was done.

On February 11, 2008, Everett says, he showed up for work at the butcher shop when Jenkins was getting ready to leave. He says that Jenkins "began exercising his position as being in charge" and told Everett what he wanted him to do, but Everett says that he was getting tired of always having to do the cleaning. He told this to Jenkins, and said how "bossy" Jenkins was, and that Jenkins had been there all day and had not cleaned up. Jenkins replied that he had not had time to

1

clean up because he was the shop clerk, and that if Everett had a problem with that, he needed to take it up with Captain Hasty. Everett said no, Jenkins had gotten him into the kitchen, and now he wanted Jenkins to have him released from the kitchen.

Everett states that Jenkins "stormed out like a little kid" and was gone for about five to nine minutes, apparently to see Hasty. Jenkins returned and told Everett that Hasty had said that he, Jenkins, could "move you around." Everett said that he had not asked to be "moved around," but to be released from the kitchen.

Everett says that he stopped reporting to the butcher shop for work, but instead reported to the kitchen. He refers to an incident in which Jenkins had a dispute with an inmate named Kelly Burkey, after which Burkey was removed from the butcher shop; Everett says that Jenkins went around boasting that he had given the food service managers, Hasty and Smith, a choice between himself and Burkey, and the managers chose to keep him instead of Burkey.

Everett says that he was approached by Smith on February 13 about a job assignment somewhere else in the kitchen. Everett told him that he wanted to be moved out of the kitchen, and Smith said that they were short-handed so they were not letting anyone go. Everett says that Jenkins was "close" to Hasty and Smith, and that Jenkins would even steal meat for the officers and make special cuts; he says that all of Hasty's clerks ate special food and that he, Everett, had to wait until they finished before he could have some of whatever they were having.

On February 14, 2008, Everett says that he was assigned to work in the vegetable vault with an inmate named Michael Timmons. However, Everett says, he just watched Timmons, because the vault required long standing at the sink washing and cutting vegetables, and there was water on the floor. He says that Smith watched him everywhere he went. That same day, Everett says, he handed Hasty an inmate request form asking to be released from the kitchen, and Hasty said that he was short-handed, but that if he, Everett, could find someone who would switch with him, Hasty would give Everett a release. Everett replied that it was not his job to find workers for Hasty and that Hasty could release him if he wanted to. Hasty asked if Everett wanted to go back to work in the Officers'

2

Dining Room, and Everett said no, "you treat good workers badly for those you like, I don't want to work for you at all."

At supper time that day, Everett says that Timmons had finished up all of the vegetable vault duty for the day, and so the two of them asked Smith if they could leave for the day. Smith said no, he needed them to work on the serving line. Timmons asked what were the people that were supposed to be working on the serving line going to be doing. Everett says that Timmons wound up on the serving line anyway, while he, Everett, "walked around with my shower shoes in my hand."

When Smith saw this, Everett says, he told him to "go put up your shower shoes, I have something for you to do." Everett says that he "fooled around," and Smith saw him later, saying "I told you to put up those shoes, I have something for you to do." Everett walked slowly to the restroom to put up his shoes, and Smith walked over as though he was going to walk into Everett. Everett turned around and said "Mr. Smith, don't walk up on me like that." Everett says that he walked backwards while saying this, while Smith continued to walk toward him.

Everett states that he put up his shoes and went with Smith, who took him to the bakery. He says that the inmate who was supposed to clean the bakery was in the Officers' Dining Room "just standing around," but Smith made Everett sweep the whole bakery floor even though there were only three small pieces of paper on the floor.

Once Everett was finished sweeping, he went to get his shower shoes. Smith called him in the office and told him to close the door. Everett said "I'm not coming in there so you can cross me." Smith replied that he just wanted to talk to him. Inside the office, Smith said that he could have removed all of the commissary workers so that "we could have taken care of our business," which Everett says means that he and Everett could have had a fight. Everett replied that he was not afraid of Smith and that "one of us would not have come from back there. Don't walk up on me like that, and I won't lay my shower shoes down."

3

The next morning, Everett says, when he got to work, he learned that Smith had come in early and was in Hasty's office all morning. He says that Smith had personally posted the job change list, which was normally done by Hasty's clerks. When Everett looked at the list, he saw that his job had been changed to a counter attendant, which job required that he serve on the line during the time that the general population is being fed, without a break. Many times, he says, food is spilled on the floor, and so after the meal is done, Everett would have to throw water on the floor, making it wet and slippery. He says that this condition caused him to be at serious risk of injury.

Everett states that he went to Smith and told him that the job change was against his health summary restrictions, and Smith replied that "you have no restrictions." Everett went to Hasty's office and asked the clerk to see if any of Everett's medical restrictions had been removed, but they had not been. Everett says that this showed that Smith had an "evil motive or intent to hurt me any way he could." In fact, Everett says that he had a medical restriction requiring only limited standing.

On February 19, 2008, Everett says that he sent in sick call requests complaining that he was suffering numbness in his legs and feet every day after work. He had filed a grievance on February 15 and the response was that his allegations that staff were allowing another inmate to exercise authority over him could not be substantiated, and that his medical restrictions were compatible with his current job assignment. The grievance indicated that the investigation had been done by Sgt. Gatson.

Everett says that every day after work, he went to his bunk suffering from the long standing in his job as counter attendant. He states that he was given a medication called Meloxicam, but that this was of no help.[1] On March 16, he sent inmate request forms to Vonda Johnson and Alynda Gatson, but received no response. He then filed a grievance the next day, and was again told that his job assignment was not in violation of his medical restrictions. When he filed another grievance, it was returned as "redundant."

---

[1] Meloxicam is a non-steroidal anti-inflammatory medication used to treat tenderness, pain, and swelling.

Everett says that he continued to file grievances about the issue and sick call requests concerning the numbness in his legs and feet. He was given another medication, called naproxen, but this also was of no help.

At the hearing, Everett testified that his medical restrictions included no prolonged standing and no walking on wet, uneven surfaces. He said that when he worked on the serving line, he had to stand the whole time while serving; this entailed standing for three hours while serving lunch, then a break, and then three hours while serving supper. He said that a grievance response had told him that he got a 15-minute break every hour, but this was not true. Everett stated that he was now on a different medication, which helped "somewhat."

Everett explained that he had been assigned to work in the vegetable vault for only one day before being changed to a counter attendant. He stayed assigned as a counter attendant until leaving the unit in September of 2008. When he arrived at the Polunsky Unit, his present assignment, he was placed on a medical squad, which he says has never been called out to work.

Chip Satterwhite, a regional grievance coordinator for TDCJ, testified under oath at the Spears hearing that Everett's health summary for classification (HS-18) form showed that as Everett said, his work restrictions included limited standing and no walking on wet, uneven surfaces. He noted that the walking restriction generally applied to field work, although he said that it could possibly apply to kitchen work.

Warden Dewberry, a TDCJ official also present at the hearing, testified under oath that the serving line is a stationary job, with no walking involved, and that the floor was not wet except at the very end, when it was washed. Sometimes a counter attendant might have to step away from the line, but not very far. Dewberry said, as the grievance responses had observed, that being a counter attendant was not inconsistent with Everett's medical restrictions.

Everett stated that he received a definition from a medical assistant who told him that he should not be on the serving line and that he should get 10-minute breaks to elevate his legs. The Court told him to send in a copy, and Everett has done so. The document consists of an inmate

5

request form asking what the term "limited standing" means; the response, signed by administrative associate Jeanie Allison, saying that limited standing means "assign to work where inmate may elevate lower extremities for 10 minutes each hour. If stricter limitations are necessary, consider 'sedentary work only.'" Contrary to Everett's assertion, the response does not say that he should not be on the serving line. Records provided by TDCJ show that the definition provided by the response is correct; an investigation into Everett's allegations, included in these records, shows that the TDCJ officials determined that Everett's job assignment in the kitchen was not incompatible with his work restrictions.

Legal Standards and Analysis

The Fifth Circuit has stated that inmates have no liberty interest in their job assignments. Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989). Thus, the fact that Everett was assigned to the kitchen, or directed to sweep floors or serve on the serving line, does not itself implicate any constitutionally protected liberty interest.

Everett's primary complaint is that he was made to work outside of his medical restrictions. The Fifth Circuit has stated that requiring an inmate to work beyond his physical capacity may raise a valid civil rights issue, but the plaintiff must show that the work has been assigned with knowledge of the condition and that it will be worsened thereby, or continued with the same knowledge. As a result, the Fifth Circuit said, only if the officials know that the work assigned will significantly aggravate a serious medical condition will there be an Eighth Amendment violation. Jackson v. Cain, 864 F.2d at 1246. In other words, if prison officials assign an inmate to a work detail and they know that such an assignment could exacerbate a serious physical ailment, then such a decision could constitute deliberate indifference. Mendoza v. Lynaugh, 989 F.2d 191, 194 (5th Cir. 1993).

In this case, all of the prison records show that the assignment to the kitchen was consistent with Everett's work restrictions. Thus, although Everett says that he complained to the supervisory officials, including Amy Jones, the unit classification supervisor; Vonda Johnson, the unit ACA [American Correctional Association] coordinator; and Alynda Gatson, the unit compliance sergeant,

he has failed to show that these officials violated his constitutional rights by failing to believe his assertion that his job assignment violated his medical classification when an investigation concluded to the contrary. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances or complaints resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). Everett's claims against Jones, Johnson, and Gatson are without merit.

Everett goes on to complain that Captain Hasty did not give him the breaks which he was supposed to receive under his medical classification. In his Step Two grievance on this issue, he specifically says that "Hasty never gave me any breaks." As a result, Everett says, he experienced pain and numbness in his legs.

Indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989). The Supreme Court has held, however, that to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Rhodes v. Chapman, 452 U.S. 337, 346-7 (1981).

The Rhodes Court held that any Eighth Amendment analysis must look to the evolving standards of decency that mark the progress of a maturing society, but cautioned that the standards are derived from objective factors. Rhodes, 452 U.S. at 346.

In compliance with the Supreme Court's opinion, the Fifth Circuit has stated that the Eighth Amendment does not afford protection against mere discomfort or inconvenience. Wilson, 878 F.2d at 849.

In this case, Everett has not shown that his job assignment on the serving line and wiping down tables amounted to cruel or unusual punishment; rather, this appears to have been little more than "mere discomfort or inconvenience." He concedes that he did receive a break midway through

his shift working on the serving line, even if, as he says, he did not receive all of the breaks which he was supposed to have. While Everett says that he suffered pain in his legs, he has not shown the significant aggravation of a serious medical condition, nor do his medical records reflect any; the fact that Everett suffered discomfort in his legs after a day of work involving periods of standing does not itself show a significant aggravation of a serious medical condition.

In Harper v. Tran, 77 F.3d 478 (5th Cir., Jan. 8, 1996) (unpublished) (available on WESTLAW at 1996 WL 46726), the plaintiff William Harper suffered from painful medical conditions including degenerative disc disease. However, he was assigned to work as an orderly, and his job duties included climbing stairs to deliver food, mopping and sweeping floors, and transporting barrels of wet laundry. He repeatedly asked for reassignment, but this was delayed. As a result of the work assignment, Harper said, he has a severely limited range of motion, excruciating recurring pain, and he now has difficulty in completing even the most effortless work assignment. The district court concluded that Harper's claims amounted to no more than negligence, and dismissed his lawsuit as frivolous, and the Fifth Circuit affirmed this dismissal. Similarly, Everett's claims on this point amount to no more than negligence and do not rise to the level of deliberate indifference, and for this reason are without merit.

Everett also complains of threatening behavior by Officer Smith. He states that when he was ordered to put his shower shoes up, Smith "acted like he was going to walk into" Everett, and later Smith said that he could have "ran all the commissary workers out" so that he and Everett could "take care of their business," by which Everett assumes that he meant that the two could fight. These claims also do not amount to constitutional violations. The Fifth Circuit has held that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Bender v. Brumley, 1 F.3d 271, 274 n.3 (5th Cir. 1993); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983). The use of words, no matter how violent, does not comprise a section 1983 violation. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2nd Cir. 1973). Everett's claim on this point

is without merit; similarly, Everett has failed to show a constitutional violation in the fact that Smith told him that he had no medical restrictions, when this was in fact not true.

To the extent that Everett complains that inmate Jenkins was given supervisory powers, this fails to state a constitutional claim. In Clewis v. Anderson County Commissioners Court, 62 F.3d 392 (5th Cir., June 28, 1995) (unpublished) (available on WESTLAW at 1995 WL 449794), the Fifth Circuit stated as follows:

> Randle [the co-plaintiff] also complains that an inmate at the Anderson County Jail was given authority over other inmates. However, Randle did not plead any facts raising an allegation of injury to him caused by the deprivation of a constitutional right. A 42 U.S.C. §1983 cause of action requires an injury. Memphis Community School Dist. v. Stachura, 447 U.S. 299, 308-09, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986).

Likewise, in the present case, Everett has not pleaded or shown any injury which he suffered as a result of the fact that inmate Jenkins was apparently given some supervisory duties. Furthermore, the general prohibition against inmates exercising supervisory powers over other inmates does not arise from the Constitution or laws of the United States, but rather from the consent decree in Ruiz v. Estelle, 503 F.Supp. 1265 (S.D.Tex. 1980), *aff'd in part and vacated in part*, 679 F.2d 1115, *amended in part and vacated in part*, 688 F.2d 266 (5th Cir. 1982). However, violations of a remedial decree cannot form the basis of a Section 1983 lawsuit. Green v. McKaskle, 788 F.2d 1116, 1122-23 (5th Cir. 1986). Because Everett has not set forth a constitutional claim in this regard, his claim is without merit.

Everett also appears to raise an oblique claim of retaliation. In his complaint, he says that on March 28, 2008, his job description was changed, and on April 7, it was changed back to counter attendant. He asked Hasty why they kept changing his job, and Hasty replied "because you keep filing all those grievances." On April 9, Everett gave Captain Hasty an I-60 inmate request form seeking to be released from the kitchen. He says that Hasty signed the form, but he was never released, and so he continued to file grievances.

The Fifth Circuit has set out the requirements for a retaliation claim in Jones v. Greninger, 188 F.3d 322 (5th Cir. 1999), as follows:

> To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.

Jones, 188 F.3d at 325-26. The Court went on to note that if the inmate was unable to point to a specific constitutional right that was violated, the claim would fail.

In that case, inmate Jones complained that he was retaliated against for filing grievances, and the retaliation took the form of limiting his right of access to court. This limitation involved a transfer to work in food service, so his legal research time would be limited to five hours per week. The Fifth Circuit held that there was no constitutional violation inherent in a limitation of law library access time to five hours per week; consequently, the Court said, because Jones had failed to show that the Defendants had engaged in conduct that will result in a violation of his right of access to court, his retaliation claim fails. Jones, 188 F.3d at 326.

Similarly, in Tighe v. Wall, 100 F.3d 41 (5th Cir. 1996), inmate Thomas Tighe was assigned to the job of "inmate counsel substitute." He was removed from this job for unsatisfactory job performance, and the warden later filed an affidavit saying that he believed Tighe had improperly called the family of an inmate about allegations of physical abuse within the prison. Tighe contended that his dismissal from the job was in retaliation for providing legal assistance to fellow inmates, apparently in the form of making the call to the other inmate's family.

The Fifth Circuit held that to survive summary judgment, Tighe must allege a violation of a constitutional right and demonstrate a retaliatory motive. Although Tighe argued that his First Amendment right of free speech included the right to give legal assistance to fellow inmates, and that he was removed from his job as inmate counsel and transferred to another prison in retaliation for exercising this right, the Fifth Circuit disagreed.

Instead, the Court held that prisoners have no constitutionally protected interest in a particular facility or a specific work assignment. The Court cited an Eighth Circuit case, Gassler v. Rayl, 862 F.2d 706 (8th Cir. 1988) as saying that the transfer of a prisoner for writ-writing does not in and of itself constitute the violation of a protected right, and said that Tighe's argument that prisoners had

been deprived of his legal assistance was without merit because prisoners have no right to a particular inmate's help in legal matters, so long as the putative recipient's right of access to the courts is not infringed. Consequently, the Fifth Circuit concluded that Tighe had failed to show the violation of a constitutional right, and so his retaliation claim failed. Tighe, 100 F.3d at 43.

In the present case, Everett has failed to show that the alleged retaliation deprived him of a constitutionally protected right. The fact that he was assigned to work at different places in the kitchen does not implicate any constitutionally protected liberty interests, but rather is *de minimis*.[2] *See* Morris v. Powell, 449 F.3d 682, 684 (5th Cir.), *cert. denied*, 549 U.S. 1038 (2006) (inmate must allege more than *de minimis* retaliation in order to proceed on a retaliation claim). Nor has Everett shown that but for the alleged retaliatory motive, the incident complained of would not have occurred. His claim on this point is without merit.

Finally, Everett complains that the actions of the prison officials violated prison rules and regulations, including the classification plan and the correctional managed health care policy manual. The Fifth Circuit has held that a violation of prison rules and regulations alone is not sufficient to rise to the standards of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). This claim is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

---

[2]The TDCJ classification records show that Everett had been assigned as a "butcher 2nd," and that on February 19, 2008, his assignment was changed to "counter attendant 2nd." This assignment was not changed again until August, after the filing of this lawsuit.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Everett's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, his lawsuit may be dismissed as frivolous and for failure to state a claim under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **7** day of **May, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE